UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00929-GNS-RSE

PHARMACY CORPORATION OF AMERICA, et al.             PLAINTIFFS

v.

CONCORD HEALTHCARE GROUP, LLC, et al.               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Default Judgment (DN 37). The motion has been fully briefed and is ripe for decision. For the reasons stated below, the motion is **GRANTED**.

### I.     BACKGROUND

This action was brought by Plaintiffs Pharmacy Corporation of America, PharMerica Long-Term Care, LLC, and PharMerica Hospital Services, LLC (collectively "Plaintiffs") against twenty-one defendants, only one of which, Mesa Hills Specialty Operator LLC ("Mesa Hills"), filed an answer. (Compl. ¶¶ 5-29, DN 1; Answer, DN 29). After Plaintiffs and Mesa Hills reached a settlement, the Court entered an Order of Stipulated Dismissal and granted Plaintiffs' Motions for Entry of Default against the other twenty defendants. (Order, DN 31; Order, DN 36).

Plaintiffs now move for default judgment pursuant to Fed. R. Civ. P. 55(b) against: Concord Healthcare Group LLC; Waco Healthcare Residence, LLC; Fairview Operations, LLC; Manor Nursing & Rehab Center, LLC; Western Hills Nursing & Rehab Center, LLC; Groesbeck Healthcare Residence, LLC; Mesa Hills Healthcare Residence Operator, LLC; Plano Healthcare Residence Operator, LLC; Plano Specialty Hospital Operator, LLC; Specialty Hospital of Midwest

City Operator, LLC; Josef Neuman ("Neuman"), in his individual capacity; Neuman, in his capacity as Trustee for JSN Trust; Rosenberg, in his capacity as Trustee for the OAR 2015 Irrevocable Trust; Crestview HH Opco, LLC; Fairview HH Opco, LLC; Manor HH Opco, LLC; Western Hills HH Opco, LLC; Windsor HH Opco, LLC; and Serenity Healthcare Management LLC, (collectively "Defendants").[1]

This action arises out of the sale of pharmacy goods by Plaintiffs to Defendants for which Defendants breached their payment obligations. (Compl. ¶¶ 33-34). Plaintiffs reached a settlement agreement with Defendants on April 27, 2016, but Defendants breached that settlement agreement and the Court entered judgments against Defendants totaling $1,262,449.60, plus interest and fees. (Compl. ¶¶ 35-41).

Settling Defendants never satisfied the judgments. (Compl. ¶ 42). To settle the previous balances Plaintiffs agreed to accept $800,000 plus 6% interest and an acknowledgement by Defendants they owed Plaintiffs $1,686,882.05. (Settlement Agreement ¶¶ 4.01-4.02, DN 1-1). Defendants defaulted under this settlement agreement as well. (Compl. ¶ 52). Plaintiffs and Defendants then agreed to an amendment of the settlement agreement under which Defendants and Guarantors forfeited any opportunity to cure future defaults, and upon default Plaintiffs could collect the entire old balance due. (Compl. ¶¶ 53-57; Am. Settlement Agreement, DN 1-2).

The motion is ripe for adjudication.

---

[1] While Plaintiffs also seek default judgment against Oscar Rosenberg ("Rosenberg"), Rosenberg has filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Texas. (Suggestion Bankruptcy, DN 40). Accordingly, any claim asserted against him in his individual capacity is stayed pursuant to 11 U.S.C. § 362.

## II.     JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship and the amount in controversy exceeds $75,000.

## III.     DISCUSSION

"Rule 55(b)(2) governs all cases in which the court enters a default judgment."  10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2684 (rev. 4th ed. Aug. 2019 update).  As Wright & Miller note:

> When an application is made to the court under Rule 55(b)(2) for the entry of the judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered.  The ability of the court to exercise its discretion . . . is made effect by the two requirements in Rule 55(b)(2) that an application must be presented to the court for the entry of judgment and that notice of the application must be sent to any defaulting party who has appeared.

*Id*. § 2685 (citations omitted); *see* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment has appeared personally . . . that party . . . must be served with written notice of the application [for a default judgment] at least 7 days before the hearing.").

Plaintiffs successfully served Defendants, applied for and received an entry of default, and now have applied to the Court for default judgment.  The question thus becomes whether Defendants have "appeared" in this action so as to be afforded the required notice regarding Plaintiffs' motion for default judgment.  Defendants have not acted in a way to comport with the "appearance" requirement to be afforded seven days' notice of Plaintiffs' motion for default judgment.

Therefore, all that remains is determining whether default judgment should be granted in Plaintiffs' favor on the issue of liability.

Only if Plaintiffs' claims asserted against Defendants are supported by sufficient factual content will liability on the part of Defendants be established:

> The fact that a default is entered does not automatically result in plaintiff recovering what was demanded in the complaint. If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Liability is not deemed established simply because of the default . . . .
>
> The distinction between defendant's concession, by defaulting, of the facts in plaintiff's complaint and a finding that liability is established is an important one about which there exists some confusion . . . .
>
> . . . Even after default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.

10A Wright & Miller, *supra*, § 2688.1 (citations omitted).

Plaintiffs argue they are entitled to liquidated damages. (Pls.' Mot. Default J. ¶ 27). "Liquidated damages are those made certain or fixed by agreement of parties or by operation of law." *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 414 (6th Cir. 2006) (citing *Black's Law Dictionary* 930 (6th ed. 1990)). "[L]iquidated damages are of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *Id.* (internal quotation marks omitted) (citing *3D Enters. Contracting Corp. v. Louisville & Jefferson Co. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005)).

One example of liquidated damages is a "failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value in a breach-of-contract action." *Id.* (citing *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.3d 136, 144 (Ky. 1991)). In contrast,

"[u]nliquidated damages are damages which cannot be determined by a fixed formula and must be established by a judge or jury." *Id.* (citing *Black's Law Dictionary* 930 (8th ed. 2004)).

Plaintiffs in this action allege Defendants defaulted under the Amended Settlement Agreement. (Compl. ¶¶ 59-62). A settlement agreement is essentially a contract and is interpreted as a contract; it is valid if it satisfies the general requirements of a contract, i.e., offer, acceptance, and consideration. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002) (citations omitted). "The primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the parties." *Id.* (citation omitted). Absent an ambiguity in the contract, the Court must determine the parties' intentions based on the "four corners" of the documents. *Id.* (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)). It is not disputed that the Amended Settlement agreement was a valid contract.

A provision for liquidated damages will be upheld if it functions as liquidated damages and not a penalty. *Pharmacy Corp. of Am. v. Premier Healthcare Mgmt., LLC*, No. 3:18-CV-754-RGJ, 2019 WL 6329355, at *5 (W.D. Ky. Nov. 26, 2019) (citing *United Serv. Auto. Ass'n v. ADT Sec. Servs., Inc.*, 241 S.W.3d 335, 340 (Ky. App. 2006)). As this Court has noted:

> Where, at the time of the execution of the contract, damages may be uncertain in character or amount, or difficult to reasonably ascertain, a provision for liquidated damages will be enforced, provided the amount agreed upon is not greatly disproportionate to the injury which might result. The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure a performance of the contract and liquidated damages are to be paid in lieu of performance. Courts today tend to favor liquidated damage provisions.

*Id.* (internal citations omitted) (citation omitted).

As stated above, Plaintiffs and Defendants initially agreed to a negotiated settlement of $800,000, plus 6% interest. (Settlement Agreement ¶¶ 4.01-4.02, DN 1-1). After Defendants

5

defaulted, they agreed to a liquidated damages clause in the Amended Settlement Agreement, which stated:

> If Settling Parties default under Article 3, the entire Old Balance (less any payments made in accordance with Section 4.02, applied first to interest and then to principal) will be immediately due and payable without further notice or demand to Settling Parties (the "Accelerated Balance"). The Accelerated Balance will earn interest at the rate of six percent (6%) per annum from the date of the Uncured Settlement Default until paid in full. Further, in the event of an Uncured Settlement Default, PharMerica may immediately seek to collect upon the 2017 Judgments and enforce the guaranty in Article V without further notice to Settling Parties or Guarantor.

(Am. Settlement Agreement ¶ 4.05).

This liquidated damages provision is clearly not disproportionate to the damages suffered by Plaintiffs. *See Pharmacy Corp. pf Am.*, 2019 WL 6329355, at *5. In the initial Settlement Agreement, Defendants stipulated that they owe Plaintiffs $1,686,882.05. (Settlement Agreement ¶¶ 4.01-4.02). This Court previously ruled that Plaintiffs are entitled to $1,262,449.60, plus interest and fees. (Compl. ¶¶ 37-41). Plaintiffs agreed to accept less in the initial Settlement Agreement, but Defendants once again failed to uphold their end of the bargain. (Compl. ¶ 52). The liquidated damages clause from the Amended Settlement Agreement simply provides that Plaintiffs will be paid what they are owed by Defendants and have not been paid despite numerous agreements.

The liquidated damages provision in this instance does not function as a penalty. *See Pharmacy Corp. of Am.*, 2019 WL 6329355, at *5. The provision was only to be effective in the event of default by Defendants, so Plaintiffs are being paid "in lieu of performance." *Id.* at *5 (citation omitted).

6

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' Motion for Default Judgment (DN 37) is **GRANTED**. The Court enters judgment as follows:

   a. Entry of judgment in favor of Plaintiffs against Defendants Concord Healthcare Group LLC; Waco Healthcare Residence, LLC; Fairview Operations, LLC; Manor Nursing & Rehab Center, LLC; Western Hills Nursing & Rehab Center, LLC; Groesbeck Healthcare Residence, LLC; Mesa Hills Healthcare Residence Operator, LLC; Plano Healthcare Residence Operator, LLC; Plano Specialty Hospital Operator, LLC; Specialty Hospital of Midwest City Operator, LLC; Crestview HH Opco, LLC; Fairview HH Opco, LLC; Manor HH Opco, LLC; Western Hills HH Opco, LLC; Windsor HH Opco, LLC; and Serenity Healthcare Management LLC, jointly and severally, in the following amounts:

      i. Principal of $1,473,167.87.

      ii. Prejudgment interest through October 8, 2020, in the amount of $3,390.30, plus $246.16 per day from October 9, 2020, through the entry of judgment.

      iii. Post-judgment interest pursuant to 28 U.S.C. § 1961.

      iv. Plaintiffs' attorneys' fees and costs of collection totaling $310,430.06.

   b. Entry of judgment in favor of Plaintiffs against Defendant Josef Neuman, individually and in his capacity as Trustee of the JSN Trust, and Defendant Oscar Rosenberg, in his capacity as Trustee of the OAR 2015 Irrevocable Trust, jointly and

severally with each other and with the judgment referenced in (a) above, in the following amounts:

      i.      Principal of $800,000.

      ii.      Prejudgment interest through October 8, 2020, in the amount of $112,569.86, plus $131.51 per day from October 9, 2020, through the entry of judgment.

      iii.      Post-judgment interest pursuant to 28 U.S.C. § 1961.

      iv.      Plaintiffs' attorneys' fees and costs of collection totaling $310,430.06.

2.    The Clerk of Court shall **ADMINISTRATIVELY CLOSE** this matter. Plaintiffs shall, upon resolution of Oscar Rosenberg's bankruptcy, notify the Court and provide a status report addressing what, if any, claims they maintain against Oscar Rosenberg.

                                      Greg N. Stivers, Chief Judge
                                      United States District Court

                                             May 28, 2021

cc:    counsel of record